UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

YUNUS YESIL,

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

No. 1:26-cv-01758-DC-AC (HC)

ORDER GRANTING IN PART
PETITIONER'S MOTION FOR A
TEMPORARY RESTRAINING ORDER

(Doc. No. 4)

This matter is before the court on Petitioner Yunus Yesil's motion for a temporary restraining order (Doc. No. 4), filed along with his petition for writ of habeas corpus brought under 28 U.S.C. § 2241, challenging her re-detention by U.S. immigration authorities. (Doc. No. 1.) For the reasons explained below, the court will grant in part Petitioner's motion for a temporary restraining order.

**BACKGROUND**

**A.     Factual Background**

Petitioner Yunus Yesil is Kurdish and a native of Turkey. (Doc. No. 1 at ¶ 31.) Petitioner entered the United States on January 26, 2023. (*Id.* at ¶ 37.) Shortly after Petitioner's entry, Immigration and Customs Enforcement ("ICE") officers took Petitioner into custody. (*Id.* at ¶ 37.) On March 22, 2023, Petitioner was released from custody on parole and given a Notice to Appear. (*Id.*; Doc. No. 8 at 7.) On May 12, 2023, Petitioner filed an application for asylum and

1

withholding of removal. (Doc. No. 1 at ¶ 37.)

On February 19, 2026, Petitioner was detained after appearing for his check-in appointment at the ICE office in San Francisco. (*Id.* at ¶ 42.) At that time, ICE officers informed Petitioner he was being detained because of his arrest record. (*Id.*) On September 13, 2025, Petitioner was arrested by local law enforcement in connection with a domestic incident involving Petitioner's wife. (*Id.*) Petitioner's criminal record shows that Petitioner was arrested on charges battery of a spouse in violation of California Penal Code § 243(e)(1) and false imprisonment in violation of California Penal Code § 236. (Doc. No. 8 at 3, 20–21.) Petitioner's criminal record also reflects that, though Petitioner was initially detained, charges were not filed due to lack of sufficient evidence. (*Id.* at 20–21.) Petitioner and Petitioner's wife assert that the altercation leading to Petitioner's arrest was a "verbal argument" only, and that there was no physical altercation. (Doc. No. 1-2 at ¶ 6; 1-3 at ¶ 3–4.)

Following Petitioner's arrest by ICE, Petitioner was transferred to the California City Correction Center. (Doc. No. 1 at ¶ 42.)

**B.      Procedural Background**

On March 4, 2026, Petitioner filed a habeas petition asserting claims against Respondents Christopher Chestnut, Sergio Albarran, Kristi Noem, Todd M. Lyons, and Pam Bondi, alleging: (1) violation of the due process clause of the Fifth Amendment to the Constitution; and (2) violation of the Immigration and Nationality Act ("INA"). (Doc. No. 1 at ¶¶ 74–79.) That same day, Petitioner filed a motion for a temporary restraining order. (Doc. No. 4.) In that motion, Petitioner seeks an order "enjoining Respondents from detaining Petitioner for the purposes of civil immigration detention . . . and from removing, transferring, or otherwise altering Petitioner's custodial status should he remained detained . . . ." (Doc. No. 4-1 at ¶ 1.)

/////

/////

/////

/////

/////

On March 10, 2026, Respondents filed an opposition to Petitioner's motion for a temporary restraining order.[1] (Doc. No. 8.) That same day, Petitioner filed a reply thereto. (Doc. No. 9.)

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A party seeking injunctive relief must make a showing on all four prongs of the *Winter* factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024);

---

[1] Respondents also request the court take judicial notice of the exhibits attached to Respondent's opposition, which includes Petitioner's immigration record, FBI criminal history record, and a summary of the Laken Riley Act from the Executive Office for Immigration Review. (Doc. No. 8 at 7–30.) Petitioner did not file an opposition to this request. The court will take judicial notice of the requested documents. *See Dent v. Holder*, 627 F.3d 365, 371 (9th Cir. 2010) (taking judicial notice of documents in a noncitizen's A-file); *Drake v. Clendenin*, No. 1:22-cv-01165-KES-EPG, 2024 WL 5238852, at *4 (E.D. Cal. Dec. 27, 2024) (taking judicial notice of plaintiff's criminal record).

*see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

**DISCUSSION**

**A.      Likelihood of Success on the Merits**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. It is firmly established that these protections extend to noncitizens present in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("It must be concluded that all persons within the territory of the United States are entitled to the protection guarantied by [the Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law.").

Courts examine procedural due process claims in two steps. *Berrios v. Albarran*, No. 25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The first step asks whether a protected liberty interest under the Due Process Clause exists. *Id*. The second step "examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Id*.

The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary. *See Zadvydas*, 533 U.S. at 693. Since Petitioner has a protected liberty interest, the court must determine the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To make that determination, the court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland,* 53 F.4th 1189, 1206–07 (9th Cir. 2022) (applying the *Mathews* test to a procedural due process challenge to a detention under 8 U.S.C. § 1226, explaining that "*Mathews* remains a flexible test that can and must

account for the heightened governmental interest in the immigration detention context"); *see also*

*Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in

immigration detention context). The *Mathews* test considers three factors: (1) the private interest

affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. at

335.

Turning to the first *Mathews* factor, Petitioner has a private interest in remaining free from

detention. "Freedom from imprisonment—from government custody, detention, or other forms of

physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*,

533 U.S. at 690. Petitioner was out of custody for almost three years prior to his re-detention.

(Doc. No. 1 at ¶¶ 37, 42.) During those three years, Petitioner had employment authorization and

was gainfully employed as a delivery driver. (*Id.* at ¶ 40.) Petitioner and his wife have at least one

child, and his wife is either pregnant or has recently delivered their second child. (*Id.* at ¶ 44.)

Petitioner's brother is supporting his family financially in Petitioner's absence. (*Id.*) The length of

time and the connections Petitioner made with his community during that time create a powerful

interest for Petitioner in his continued liberty. *See Doe v Becerra*, 787 F. Supp. 3d 1083, 1094

(E.D. Cal. 2025). Thus, this factor favors a finding that Petitioner's private interest has been

affected by his detention.

The second *Mathews* factor, the risk of erroneous deprivation to Petitioner, also weighs in

Petitioner's favor. *See A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5

(E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the

petitioner] has not received any bond or custody redetermination hearing."). Civil immigration

detention is "nonpunitive in purpose and effect" and is justified when a noncitizen presents as a

danger to the community or risk of flight. *Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. &*

*Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

Petitioner has been detained for over a month without being provided a bond hearing

before an immigration judge to evaluate whether Petitioner is properly detained pursuant to §

1226(c) or whether he is dangerous and/or flight risk. (Doc. No. 1 at ¶ 67–70.) Respondents

contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E)(i)–(ii).

(Doc. No. 8 at 3.) Congress enacted the provisions under § 1226(c) in response to a legislative determination that noncitizens with certain criminal convictions pose elevated risks of danger to their communities. *See Demore v. Kim*, 538 U.S. 510, 513 (2003). Section 1226(c) therefore subjects noncitizens convicted of these enumerated crimes to mandatory detention. *Id.* In January 2025, Congress passed the Laken Riley Act, which amended § 1226(c) to subject additional categories of noncitizens who have had interactions with law enforcement to mandatory detention without a bond hearing. Pub. L. No. 119-1, 139 Stat. 3 (2025). Specifically, under 8 U.S.C. § 1226(c)(1)(E), detention is mandatory for any noncitizen who is charged as "inadmissible" as having entered the U.S. without inspection under 8 U.S.C. § 1182(a)(6)(A) and:

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E)(i)–(ii). Respondents contend generally that Petitioner's arrest for misdemeanor battery of a spouse in violation of California Penal Code § 243(e) is a textual match for the offenses the Laken Riley Act added to § 1226(c), but they do not explain under which enumerated offense Petitioner's arrest falls. (*See* Doc. No. 8 at 3.) Assuming Respondents are arguing that an arrest under California Penal Code § 243(e) falls under "any crime that results in death or serious bodily injury," 8 U.S.C. § 1226(c)(1)(E)(i)–(ii), that argument likely fails as applied to Petitioner. Petitioner attests that the altercation between him and his wife that led to his arrest was a "verbal argument," and that no physical alteration occurred, and Petitioner's wife supports this version of events. (Doc. No. 1-2 at ¶ 6; 1-3 at ¶ 3–4.) Respondents do not provide any details regarding the incident or even allege that the altercation resulted in serious bodily injury. Further, local law enforcement declined to file charges against Petitioner due to lack of evidence. (Doc. No. 8 at 20–21.) Thus, on the limited record presently before the court, it does not appear that the Laken Riley Act applies to Petitioner.

/////

Further, as another judge in this district recently summarized,

> courts have construed the Laken Riley Act to apply only where an individual is *currently* charged with or arrested for the enumerated crimes, and have concluded mandatory detention is not required when charges are never filed, *Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *6 (S.D. Iowa Sept. 30, 2025), or where an individual has been acquitted, *E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264, at *10 (D. Nev. Oct. 14, 2025).

*Singh v. Chestnut*, No. 1:26-cv-00546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026); *see also S.E. v. Noem*, No. 1:26-cv-00356-DAD-SCR, 2026 WL 206085, at *3 (E.D. Cal. Jan. 27, 2026) ("Further, petitioner will not be provided process through the criminal system to contest the basis for his arrest, because prosecution was rejected, charges have not been filed and the investigation of the incident in question has been closed . . . [t]herefore, the risk of erroneous deprivation of petitioner's liberty is high under such circumstances.").

Turning to the third *Mathews* factor, the court acknowledges the government has an interest in the steady enforcement of its immigration laws but recognizes that the government's interest in detaining Petitioner without any procedural protections is substantially "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963,  970 (N.D. Cal. 2019); Custody hearings in immigration court are routine and impose a "minimal" cost on the government. *Doe*, 787 F. Supp. 3d at 1094.

On balance, the *Mathews* factors favor Petitioner and support his argument that due process requires that he immediately receive a bond hearing. Therefore, the court finds that Petitioner has established a likelihood of success on the merits of his due process claim.

**B.    Irreparable Harm**

Petitioner will suffer irreparable harm in the absence of a temporary restraining order. Broadly speaking, "[d]eprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citation omitted). Further, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for

7

injunctive relief.

## C.    Balance of the Equities and Public Interest

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [ ] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted). Though Respondents have an interest in enforcing immigration laws, Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from detaining Petitioner in violation of the applicable law, which is the case here. This relief also benefits the public because "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). Accordingly, the court finds that the balance of equities and public interest weigh in favor of injunctive relief and consequently, all four *Winter* factors weigh in favor of Petitioner.

## D.    Bond

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id*. (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v.*

*Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

**CONCLUSION**

For the reasons explained above,

1.   Respondents request for judicial notice (Doc. No. 8 at 2 n.1) is GRANTED;

2.   Petitioner Yunus Yesil's motion for a temporary restraining order (Doc. No. 4) is GRANTED, IN PART, as follows:

    a.   Within ten (10) days of the date of entry of this order, Respondents shall provide Petitioner with a bond hearing at which the Government shall bear the burden of showing that he is not a flight risk or a risk to community safety;[2]

    b.   If Petitioner is not provided a bond hearing within ten (10) days of the date of entry of this order, he shall be released from Respondents' custody;

    c.   Petitioner's request for immediate release is DENIED;

3.   This case is referred to assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:   **March 25, 2026**

Dena Coggins
United States District Judge

---

[2] The Ninth Circuit recently noted that the Government bears the burden of proof at a bond hearing where the petitioner is mandatorily detained pursuant to § 1226(c). *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024).